**In re ANAHEIM ANGELS BASEBALL CLUB, INC., and Anaheim Angels, L.P., Relators.**

No. 08–98–00385–CV.

Court of Appeals of Texas, El Paso.

May 27, 1999.

Rehearing Overruled July 14, 1999.

Thomas A. Connop, Locke, Purnell, Rain, Harrell, Dallas, Tx, for relators.

Kathleen M. McCulloch, Shafer, Davis, McCollum, Ashley, O'Leary & Stoker, Odessa, TX, Deborah Johnson Race, Ireland Carroll & Kelley, Pc, Tyler, Tx, Otis W. Carroll, Ireland, Carroll & Kelley, P.C., Tyler, Tx, Mike Parker, Law Offices of

Mike Parker, Carthage, for real party in interest.

## OPINION

LARSEN, J.

This is an original proceeding in mandamus. We deny relief for the reasons stated below.[1]

### FACTS

Tim Harkrider II, a professional baseball player, filed suit against the Anaheim Angels Baseball Club and the Anaheim Angels, L.P. (collectively "the Angels") for breach of his minor league uniform player contract. Harkrider contended that the Angels breached the contract by failing to provide competent medical care after he was injured while playing for the Angels' Midland farm team. The Angels filed a motion to compel arbitration based on the following clause in Harkrider's contract:

> In the event of any dispute or claim between the Player and Club arising under any of the provisions of this Minor League Uniform Player Contract, the decision of Club regarding the dispute or claim always shall be subject to Player's rights of appeal which Player may exercise by filing a written, itemized and detailed appeal form with the Commissioner within 120 days of the maturity of the claim. The decision of the Commissioner shall be final and the Player agrees and understands that the decision of the Commissioner may be not be [sic] challenged in any federal or state court or any other tribunal.

The trial court denied the Angels' request for compulsory arbitration for two reasons.

First, it found that the clause was not an exclusive agreement to arbitrate Harkrider's complaint. Alternatively, the trial court found that the Angels waived any right to enforce arbitration by participating in litigation of the case. The Angels challenge that ruling in this court.

### JURISDICTION

We must first determine whether the Federal Arbitration Act ("FAA") or the Texas General Arbitration Act ("TGAA") applies to this case. This is because a litigant asserting applicability of the TGAA may seek an interlocutory appeal whereas a litigant seeking enforcement of arbitration under the FAA must pursue relief through writ of mandamus.[2] Under the supremacy clause of the United States Constitution, the FAA preempts all otherwise applicable state laws, including the TGAA.[3] Under the FAA, which applies to transactions "involving commerce," an arbitration agreement must be enforced upon proof that a written agreement to arbitrate exists and that the claims raised are within the scope of the agreement.[4] "Commerce" is broadly construed and encompasses contracts relating to interstate commerce.[5] An employment relationship involving commerce is a sufficient transaction to fall within the Act.[6]

Thus, if Harkrider's employment relationship with the Angels involves "commerce," then the FAA governs and the Angels are entitled to seek relief through writ of mandamus. It is undisputed that

---

1. In addition to this petition for writ of mandamus, the Angels also filed an interlocutory appeal, cause number 08–98–00349–CV, on the same issue. Because we find that the Federal Arbitration Act applies to Harkrider's contract and our resolution of this mandamus pursuant to the Act renders moot the issues raised in the interlocutory appeal, we dismiss that appeal.

2. *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992).

3. U.S. Const. art. VI, cl. 2; *Anglin,* 842 S.W.2d at 271.

4. *Capital Income Properties–LXXX v. Blackmon,* 843 S.W.2d 22, 23 (Tex.1992); *BWI Companies, Inc. v. Beck,* 910 S.W.2d 620, 621–22 (Tex.App.—Austin 1995, orig. proceeding).

5. *In re Gardner Zemke Co.,* 978 S.W.2d 624, 626 (Tex.App.—El Paso 1998, orig. proceeding).

6. *BWI Companies, Inc.,* 910 S.W.2d at 622 (citing *Dickstein v. du Pont,* 443 F.2d 783, 785 (1st Cir.1971)).

the Angels' principal place of business is in Anaheim, California. It is also undisputed that Harkrider's contract enured to the benefit of the Angels' farm team in Midland, Texas where Harkrider performed services for the Angels by playing minor league baseball. Thus, it appears clear that the contract at issue at least relates to interstate commerce.

Harkrider argues, however, that in *Toolson v. New York Yankees*,[7] the United States Supreme Court created a blanket exemption from the Commerce Clause for organized baseball. In *Toolson*, the Court concluded that "Congress had no intention of including the business of baseball within the scope of the federal antitrust laws."[8] The *Toolson* opinion relies on the authority of *Federal Baseball Club of Baltimore v. National League of Professional Baseball Clubs*,[9] also a case involving application of the federal antitrust laws, in which the Court announced that the "business [of baseball] is giving exhibitions of baseball, which are purely state affairs."[10]

Although these cases do not appear to have been expressly overruled, we do not find that they exempt all aspects of organized baseball from any application of federal law. Although the United States Supreme Court continued to hold organized baseball exempt from the federal antitrust laws for other reasons, it determined in its 1972 *Flood v. Kuhn*[11] opinion that "[p]rofessional baseball is a business and it is engaged in interstate commerce."[12] Moreover, we find a distinction between the issue of whether the business of baseball is subject to antitrust laws, and the issue here, whether a contract between an employee and a California employer for services to be rendered in Texas is covered by the Federal Arbitration Act. Simply because the employee here is a baseball player and the employer is a baseball team is irrelevant to the analysis of the employment relationship between them for purposes of applicability of the Act.

We find that the Angels clearly conducted business across state lines by agreeing with Harkrider that he would play baseball for the California club's farm team in Texas. "No commercial enterprise of any kind which conducts its activities across state lines has been held to be wholly beyond the regulatory power of Congress under the Commerce Clause."[13] Accordingly, we find *Toolson* and *Federal Baseball Club of Baltimore* inapplicable. We conclude that Harkrider's employment relationship with the Angels involves commerce, and the FAA governs. The Angels therefore are entitled to seek relief through writ of mandamus.

### STANDARD OF REVIEW ON MANDAMUS

■ Mandamus will lie only to correct a clear abuse of discretion.[14] Moreover, there must be no other adequate remedy at law.[15]

#### 1. Clear abuse of discretion

■ An appellate court rarely interferes with a trial court's exercise of discretion. A clear abuse of discretion warranting correction by mandamus occurs when a court issues a decision which is without

**7.** 346 U.S. 356, 357, 74 S.Ct. 78, 79, 98 L.Ed. 64, 69 (1953).

**8.** *Id.* at 357, 74 S.Ct. at 79, 98 L.Ed. at 69.

**9.** 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898 (1922).

**10.** *Id.* at 208, 42 S.Ct. at 466, 66 L.Ed. at 900.

**11.** 407 U.S. 258, 282, 92 S.Ct. 2099, 2112, 32 L.Ed.2d 728, 743 (1972).

**12.** *Id.*

**13.** *BWI Companies, Inc.*, 910 S.W.2d at 623 (quoting *United States v. South–Eastern Underwriters Ass'n*, 322 U.S. 533, 553, 64 S.Ct. 1162, 1173–74, 88 L.Ed. 1440 (1944)).

**14.** *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding).

**15.** *Id.*

basis or guiding principles of law.[16] With respect to resolution of factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court.[17] The relator must therefore establish that the trial court could reasonably have reached only one decision.[18] Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable .[19] With respect to a trial court's determination of the legal principles controlling its ruling, the standard is much less deferential. A trial court has no "discretion" in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ.[20]

### 2. No adequate remedy by appeal

 An appellate court will deny mandamus relief if another remedy, usually appeal, is available and adequate.[21] Mandamus will not issue where there is "a clear and adequate remedy at law, such as a normal appeal." [22] Mandamus is intended to be an extraordinary remedy, available only in limited circumstances. The writ will issue "only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." [23]

## APPLICABLE LAW

 The heavy presumption in favor of arbitration requires the courts to decide any reasonably debatable question of interpretation in favor of arbitration.[24] Arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible to an interpretation which would cover the dispute at issue.[25] Arbitration has been defined as:

> [A] contractual proceeding by which the parties to a controversy or dispute, in order to obtain a speedy and inexpensive final disposition of matters involved voluntarily select arbitrators or judges of their own choice, and by consent submit the controversy to such tribunal for determination in substitution for the tribunals provided by the ordinary processes of the law.[26]

## APPLICATION OF THE LAW TO THE FACTS

 In this case, the Angels allege that the trial court committed a clear abuse of discretion by failing either to stay the litigation and order arbitration, or to dismiss the suit in light of the exclusive nature of the arbitration remedy. Although an arbitration clause need not take any particular form,[27] we are hard-

16. See Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex.1985) (orig.proceeding).

17. Walker, 827 S.W.2d at 839–40.

18. Id. at 840.

19. Id.

20. Walker, 827 S.W.2d at 840.

21. Street v. Second Court of Appeals, 715 S.W.2d 638, 639–40 (Tex.1986) (orig.proceeding).

22. Walker, 827 S.W.2d at 840 (quoting State v. Walker, 679 S.W.2d 484, 485 (Tex.1984)).

23. Holloway v. Fifth Court of Appeals, 767 S.W.2d 680, 684 (Tex.1989) (quoting James

Sales, Original Jurisdiction of the Supreme Court and the Courts of Civil Appeals of Texas in Appellate Procedure in Texas, § 1.4[1][b] at 47 (2d ed.1979)).

24. BWI Companies, Inc., 910 S.W.2d at 624.

25. Pennzoil Expl. and Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir.1998).

26. Jack B. Anglin Co., Inc., 842 S.W.2d at 268 (applying Federal Arbitration Act).

27. Massey v. Galvan, 822 S.W.2d 309, 316 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

pressed to find that the remedy articulated in the clause in question fits the definition of "arbitration." Initially we note that, though not determinative, the clause does not mention the word "arbitration" or any similar term. Instead, it refers to the player's right to take an appeal. Moreover, it does not provide for the selection of arbitrators of choice, nor does it evidence an intent to submit a controversy to a tribunal of chosen arbitrators for determination. Rather, the agreement envisions an appeal to an individual pre-selected by the club, the Commissioner of baseball, himself a signatory to the contract. Further, we note that the dispute clause contemplates a proceeding with no hearing, evidence, recording of proceedings, written decision, or any other formality commonly associated with arbitration. Although this alone is not dispositive, we think that the submission of a "written, itemized and detailed *appeal* form"[28] likewise indicates the parties' intent to create an internal, administrative appeal rather than an arbitration proceeding.

Finally, the Angels point us to an unpublished California case which found a similar (although not identical) clause to be an arbitration agreement.[29] We note that case turned on the player's voluntary participation in the "arbitration" proceedings, and is therefore distinguishable from the case before us on its facts. In any event, we decline to follow the reasoning of the California court, as it seems to us clear this dispute clause references an administrative appeal.

### CONCLUSION

We can say with positive assurance that the dispute at issue is not covered by an arbitration clause. Although the clause at issue may be a mandatory administrative

remedy of some type, that is not the question the Angels have presented. The clause is not an arbitration clause and the trial court therefore did not commit a clear abuse of discretion by failing to stay the proceedings and order arbitration, or to dismiss the suit in favor of arbitration as Harkrider's exclusive remedy. Accordingly, we deny mandamus relief.[30]

---

28. Emphasis added.

29. *Geneva Community Sports, Inc. v. Faryniarz,* No. CO14547 (Cal.Ct.App. Sept. 29, 1993).

30. We need not reach the Angels' second contention, that they did not waive their right to arbitration, because our determination that no arbitration clause exists renders this argument moot.